UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

        Plaintiff,　　　　　　　　　　　　No. 20-11910

v.　　　　　　　　　　　　　　　　　　District Judge Mark A. Goldsmith
　　　　　　　　　　　　　　　　　　　　Magistrate Judge R. Steven Whalen

TBI, INC., ET AL.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

On May 18, 2020, Plaintiff Mark W. Dobronski filed a *pro se* civil complaint in the Washtenaw County, Michigan Circuit Court, which included a claim under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Defendants removed the case to this Court on July 14, 2020 [ECF No. 1], and filed an answer, with affirmative defenses and counter-claims, on August 20, 2020 [ECF No. 11]. Before the Court is Plaintiff's motion to dismiss counter-claim No. 11 [ECF No. 12], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

### I.　FACTS

In his complaint, Plaintiff alleges that "[s]hortly before March 24, 2020," he requested that Charter Communications, Inc. d/b/a Spectrum, place five specific telephone numbers on their internal "do not call" list. ECF No. 1-2, PageID.21, ¶ 54. He states that on information and belief, "Defendant TBI is an authorized independent marketing agent for Spectrum," and that Spectrum provides its agents with their internal

"do not call" lists. *Id.,* PageID.22, ¶¶ 55-56. Plaintiff alleges that on March 24, 2020, five calls were made by "Defendant or Defendant's agent utiliz[ing] an automatic telephone dialing system to initiate each of the aforementioned five (5) telephone calls." *Id*., PageID.22-24, ¶¶ 59-74. Eventually, Plaintiff called the number that appeared on his caller ID, and was connected to a live telemarketer who identified himself as being with TBI/Telecom Brokerage Incorporated. *Id*., ¶ 76. Based on these calls, Plaintiff brings seven counts alleging violations of the TCPA, and two counts alleging violation of the MTCCCA, M.C.L. §§ 445.111a(5) and 484.125(2)(b).

Defendants brought a counter-claim against Plaintiff alleging breach of contract. More specifically, Defendants state that in a prior action, *Dobronski v. Charter Communications, Inc*., E.D. Mich. Case No. 19-12575 (the "prior action"), the parties reached a settlement, under which the Plaintiff, in exchange for a monetary sum, agreed to release claims against Charter Communications (Spectrum), as well as specified third parties, including "advisors, consultants, agents, independent contractors, vendors, [and] service providers...." ECF No. 11, PageID.68-70, ¶¶ 6-10. The agreement applied to claims accruing prior to its effective date, which Defendants state is June 3, 2020. *Id*., PageID.69-70, ¶¶ 10-11.

Defendants state that TBI provides third-party marketing and lead generation services to clients, including Spectrum. *Id*., PageID.70-71, ¶¶ 15-16. TBI states, "In initiating these calls pursuant to the aforementioned Master Services Agreement, TBI serves as a representative, consultant, independent contractor and/or service provider of Spectrum." *Id*., PageID.71, ¶ 17. TBI claims that by virtue of the settlement agreement in the prior action, Plaintiff has released it and Defendant Shepstone, an officer of TBI, from all claims before June 3, 2020, and that by filing the present complaint, Plaintiff

"breached his covenant not-to-sue the Released Parties with respect to any of the released Claims contained in the Settlement Agreement." *Id*., PageID.72, ¶ 24.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the

facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III. DISCUSSION

Plaintiff seeks dismissal of Defendant's counter-claim on four grounds: (1) that Defendant TBI was not a party to the prior settlement agreement; (2) that the prior settlement agreement is void as being contrary to public policy; (3) that Defendant comes before the Court with "unclean hands;" and (4) that Defendant's counter-claim is barred by the wrongful conduct rule. Before addressing each argument in turn, I note that in reviewing a Rule 12(b)(6) motion, I take the Defendant's well-pled allegations as true, and ask whether the counter-complaint establishes a factually plausible claim. This is not a summary judgment motion, and the Court does not resolve disputed issues of fact at this stage.

#### A. Defendant as a Non-Party to the Prior Action

The settlement agreement in the prior action is appended to Defendant's response as Exhibit A, and provides as follows in § 3, in pertinent part:

> "[F]or and in consideration of the mutual covenants set forth herein...Plaintiff...hereby agrees to release and forever discharge by this Agreement Charter and its past and present agents, employees, representatives, officers, directors, shareholders, attorneys, accountants, insurers, receivers, *advisors, consultants*, partners, partnerships, parents, divisions, subsidiaries, affiliates, related companies, assigns, *agents, independent contractors, vendors, service providers*, successors, heirs, predecessors in interest, joint ventures, and commonly-controlled corporations (collectively "Released Parties) from all liabilities, causes of action, charges, complaints, demands, suits claims, obligations, costs,

> losses, damages, rights, judgments, attorneys' fees...and all other legal responsibilities of any form whatsoever...arising out of or relating to : ( i ) the subject matter of this Agreement and the Complaint; (ii) any acts or omissions by the Released Parties occurring prior to the Effective Date...." (Emphasis added).

In their counter-claim, Defendants have alleged that by virtue of the Master Services Agreement with Spectrum, TBI is considered an independent contractor, vendor, or service provider, and thus is one of the Released Parties under the prior settlement agreement. In other words, TBI is a designated third-party beneficiary to that agreement.

First, the settlement agreement in the prior action is a contract, and is analyzed as such under Michigan law. *See Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992) ("Settlement agreements are a type of contract and are therefore governed by contract law").[1] And Michigan law, specifically M.C.L. § 600.1405, gives third-party beneficiaries the same right to enforce a contract as the direct signators:

> 'Sec. 1405. Any person for whose benefit a promise is made by way of s contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
>
> (2) (a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary." *Id*.

I note that the Plaintiff has argued that even if he is bound by this contract vis-a-vis

---

[1] Paragraph 11 of the Agreement provides that it will be governed by Michigan law. ("This Agreement is made and entered into in the State of Michigan and will in all material respects be interpreted, enforced, and governed under the laws of said state without respect to its conflict of law rules.") ECF No. 13-2, PageID.113.

Defendants, the five telephone calls underlying his suit occurred on March 24, 2020, after the effective date of the contract. The Plaintiff argues that the effective date of the contract in March 18, 2020, which is the date the prior action was dismissed by stipulation. However, it is the language of the contract, not the date of dismissal that controls the effective date. The settlement agreement itself states that a third-party beneficiaries rights vest "the moment the promise becomes legally binding on the promisor." The representative of Charter (Spectrum) did not sign the agreement until June 3, 2020. *Defendants' Exhibit 1*, ECF No. 13-2, PageID.109.

In counter-claim no. 11, Defendants have set forth a plausible claim that Defendants are third-party beneficiaries to a contract that Plaintiff breached by filing this lawsuit. If, following discovery, the Plaintiff can marshal sufficient facts to mount a defense, his remedy will lie in either a motion for summary judgment or a trial. At the pleading stage, however, Defendants have easily met their burden under *Iqbal*.

### B. Public Policy, Unclean Hands, and Wrongful Conduct Rule

I discuss these three arguments together because at best, they all require factual development and analysis that is not appropriate in a motion to dismiss.[2]

Plaintiff employs all three arguments in defense to counter-claim no. 11, arguing that the agreement in the prior action is not enforceable. That in turn requires a finding that the Defendant in the prior action violated the law. There has been no such finding. The stipulated order in the prior action simply stated:

---

[2] In his reply brief, Plaintiff argues that the Defendants also exhibited bad faith by attaching the settlement agreement to their response, in violation of a confidentiality provision of the agreement. *Plaintiff's Reply*, ECF No. 16, PageID.131. However, the agreement provides that the confidentiality requirement does not apply where disclosure "is reasonably necessary to the defense of any action to which the terms of this Agreement may apply." ECF No. 13-2, PageID.112, ¶ 4.

> "IT IS HEREBY ORDERED that this matter be, and hereby is, dismissed with prejudice as to Defendant CHARTER COMMUNICATIONS, INC., and without costs, interest or attorneys fees to any party." No. 19-12575, ECF No. 13, PageID.86.

Also, the settlement agreement specifically provides that there is no admission of liability. ("[T]his Agreement shall not be construed as an admission of liability or wrongdoing by any Party, with liability or wrongdoing being expressly denied by each Party."). ECF No. 13-2, PageID.112.

In addition, the question of whether a release agreement violates public policy is necessarily a fact-intensive inquiry. In *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987), the Supreme Court stated:

> "Most importantly, the Court of Appeals did not consider the wide variety of factual situations that can result in release-dismissal agreements. Thus, although we agree that in some cases these agreements may infringe important interests of the criminal defendant and of society as a whole, we do not believe that the mere possibility of harm to these interests calls for a per se rule."

In *Lasalle Town Houses Co-op. Ass'n v. City of Detroit ex rel. Detroit Water & Sewerage*, 2014 WL 824917 (E.D. Mich. Mar. 3, 2014), the plaintiffs argued that a prior release violated their fundamental First Amendment and Equal Protection rights, in violation of public policy. The Court, citing *Rumery*, found that argument premature at the motion to dismiss stage:

> "As an initial matter, the City has not yet adequately responded to Plaintiffs' arguments relative to contractual waiver, *Rumery* and its progeny. Neither party has had the opportunity to marshal sufficient evidence demonstrating the validity or invalidity of the release agreement. The *Rumery* court made clear that the nature of this defense requires a fact intensive inquiry. Rumery, 480 U.S. at 392....In *Barden Detroit Casino, LLC v. City of Detroit*, 59 F.Supp.2d 641 (E.D.Mich.1999), the court ultimately concluded that a developer's release and waiver; required in order to submit a proposal for casino development in Detroit, barred his subsequent First Amendment, equal protection and substantive due process challenges to the City's ordinance. *Id*. at 644. Before reaching its conclusion, the *Barden* court conducted oral argument, heard testimony, permitted the parties to engage

in limited discovery, reviewed briefing and other documentary evidence. *Id*.

"On the sparse record before this Court, a determination on the *Rumery* factors and whether the City can rely on the Plaintiffs' release in the Village Center case to bar Plaintiffs' equal protection claim does not appear appropriate at this stage of the proceedings." *Id*. at *5-6.

And in *Wigs for Kids, Inc. v. Wigs 4 Kids of Michigan, Inc*., 2017 WL 6539271, at *8 (E.D. Mich. Dec. 21, 2017), a trademark infringement case where the defendant raised an "unclean hands" defense, the Court denied a motion to dismiss, holding:

"The Sixth Circuit has stated, '[f]raud or unclean hands are not to be lightly inferred. They must be established by "clear, unequivocal and convincing' evidence."' *Kearney & Trecker Corp. v. Cincinnati Milacron Inc*., 562 F.2d 365, 371 (6th Cir. 1977)(quoting *Shnadig Corp. v. Gaines Mfg. Co.*, 494 F.2d 383, 392 (6th Cir. 1974)). Additional facts are necessary to reach this conclusion and they are not part of the record this Court considers for a motion to dismiss. Accordingly, the Court holds based on the facts pled, there are insufficient facts for Defendant's unclean hands defense as a valid basis for a motion to dismiss."

So too in the present case, Plaintiff's defenses of public policy, unclean hands, and wrongful conduct are not ripe for determination at this stage of the proceedings.

### IV. CONCLUSION

I recommend that Plaintiff's motion to dismiss counter-claim No. 11 [ECF No. 12] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987)

    Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                            s/R. Steven Whalen
                                                                            R. Steven Whalen
                                                                            United States Magistrate Judge

Dated: March 11, 2021


## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on March 11, 2021 electronically and/or by U.S. mail.

                                                                            s/Carolyn M. Ciesla
                                                                            Case Manager